**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**CHRISTOPHER MOORE,**

      **Petitioner,**

**vs.**                         **Case No. 4:10cv249-MW/CAS**

**SECRETARY, DEPARTMENT
OF CORRECTIONS,**

      **Respondent.**

_____/

## REPORT AND RECOMMENDATION TO DENY § 2254 PETITION

On June 8, 2010, Petitioner Christopher Moore, an inmate proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, with a supporting memorandum, in the Middle District of Florida.  Docs. 1 and 2.  The case was transferred to this Court and, by order dated July 29, 2010, this Court directed Respondent to file an answer, motion, or other response.  Docs. 4 and 9.  On January 4, 2011, Respondent filed a response to the § 2254 petition, with exhibits from the state court record.  Docs. 17 and 18.  On February 28, 2011, Petitioner filed a reply.  Doc. 20.  On June 4, 2012, Petitioner filed an amended reply (Doc. 33), to which Petitioner subsequently filed exhibits (Doc. 34).

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B). After careful consideration of all issues raised, the undersigned has determined that no evidentiary hearing is required for disposition of this matter. *See* Rule 8(a), R. Gov. § 2254 Cases in U.S. Dist. Cts. For the reasons stated herein, the pleadings and attachments before the Court show that Petitioner is not entitled to federal habeas relief, and the § 2254 petition should be denied.

## Relevant Procedural History

By amended information filed in the Third Judicial Circuit, Madison County, in case number 05-166-CF, the State of Florida charged Petitioner with possession of a firearm by a convicted felon in connection with events that took place on July 12, 2005. Doc. 17 Ex. E at 742. Before his trial took place, Petitioner filed several motions on his own, though he had a court-appointed attorney, including a motion to discharge his attorney. *Id*. Ex. D at 550-55. At a pretrial hearing, on January 10, 2006, the trial judge found no basis to dismiss Petitioner's court-appointed attorney. *Id*. Ex. C at 371. After performing an inquiry pursuant to Faretta v. California, 422 U.S. 806 (1975), the trial judge granted Petitioner's motion to represent himself. *Id*. at 372-80 (hearing transcript); Doc. 17 Ex. D at 694-95 (written order).

Petitioner proceeded pro se to trial, and on January 18, 2006, the jury found him guilty as charged. Doc. 17 Ex. E at 743. That same day, the court adjudicated him guilty and sentenced him to ten (10) years in prison as an habitual felony offender, to be followed by five (5) years of probation. *Id*. at 752-58.

Petitioner appealed his judgment and sentence to the First District Court of Appeal (DCA), assigned case number 1D06-0850. *See* Doc. 17 Ex. A. Petitioner requested court-appointed appellate counsel, who filed a brief raising two points on appeal: (1) whether the trial judge erred in imposing costs relating to the investigation and public defender fee; and (2) whether the trial judge abused his discretion in allowing the hearsay testimony of Betty Moore Evans. *Id*. Ex. L at i. The State filed an answer brief and Petitioner's counsel filed a reply brief. *Id*. Exs. M and N. On December 21, 2007, the First DCA per curiam affirmed the appeal without opinion. *Id*. Ex. O; *see* Moore v. State, 970 So. 2d 1827 (Fla. 1st DCA 2007) (table). The mandate issued January 8, 2008. Doc. 17 Ex. P.

On August 5, 2008, Petitioner, proceeding pro se, filed a motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850 in the state circuit court. Doc. 17 Ex. X at 1-33. Petitioner subsequently filed an amended Rule 3.850 motion as well as a second amended Rule 3.850 motion in March 2009. *Id*. Ex. Y at 1-34, 35-66. Petitioner ultimately raised six grounds.

In an order rendered April 29, 2009, the state post-conviction trial court granted in part and dismissed in part the Rule 3.850 motion. *Id*. at 34-37. The order sets forth the grounds Petitioner raised:

Ground 1: The Trial Court erroneously assessed a Public Defender's fee of $350.00.

Ground 2: The Trial Court improperly imposed a $500.00 fine and $25.00 surcharge, pursuant to section 775.083, Florida Statutes.

Ground 3: The Trial Court vindictively designated the Defendant a habitual felony offender.

Ground 4: The information underlying Defendant's conviction is defective because the Assistant State Attorney who filed the information did not have authority to do so.

Ground 5: The Trial Court erred in failing to renew an offer of assistance of counsel prior to the sentencing proceeding.

Ground 6: The Trial Court erred in denying Defendant's Motion for New Trial after conducting a hearing without giving prior notice to Defendant and without permitting him to appear in person, but rather requiring him to appear by telephone.

*Id*. at 34-35.  The court corrected Petitioner's probation order.  *Id*. at 35, 37.

Petitioner filed a Motion for Rehearing, a Motion for Rehearing – Supplemental Claim to Ground 6, a Supplement to Motion for Rehearing on Grounds 5 and 6, and a Motion for Leave to Supplement.  *Id*. Ex. Z at 1-20, 21-34, 35-38, 39-42.  On June 2, 2009, the state post-conviction trial court denied all of these motions.  *Id*. at 43.

Petitioner appealed, pro se, to the First DCA and filed a brief, in case number 1D09-4201.  Doc. 17 Ex. CC; *see* online docket for 1D09-4201 at www.1dca.org.  The State did not file an answer brief.  Doc. 17 Ex. DD.  The First DCA per curiam affirmed the case without an opinion on March 11, 2010.  *Id*. Ex. EE; Moore v. State, 34 So. 3d 6 (Fla. 1st DCA 2010) (table).  Petitioner filed a motion for rehearing, which the First DCA denied.  Doc. 17 Exs. FF, GG.  The mandate issued on May 10, 2010.  Doc. 17 Ex. HH; online docket for 1D09-4201 at www.1dca.org.

As indicated above, on June 8, 2010, Petitioner filed his § 2254 petition and memorandum. Docs. 1 and 2. Respondent filed an answer, Doc. 17, and Petitioner filed a reply, Doc. 20, as well as an amended reply, Doc. 33, with exhibits, Doc. 34.

## Analysis

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant habeas corpus relief for persons in state custody. In pertinent part, § 2254 provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). In his § 2254 petition, Petitioner raises four grounds. As explained in detail below, none of these grounds warrant federal habeas corpus relief.

## Ground 1: Denial of Effective Assistance of Counsel

In Ground 1, Petitioner claims he was denied effective assistance of counsel at sentencing and at the hearing on his motion for a new trial. Doc. 1 at 6.[1] Petitioner asserts that, on January 18, 2006, after his trial ended, the court began the sentencing proceeding. *Id*. Petitioner asserts the trial court did not advise or offer him assistance

---

[1]These page numbers in Petitioner's § 2254 petition refer to the pages in the electronic document, at the top right corner, not the paper document.

of counsel.  *Id*.  Likewise, on March 22, 2006, without advance notice, the trial court

scheduled an evidentiary hearing by telephone on Petitioner's pro se motion for a new

trial; the court refused to advise and offer Petitioner counsel.  *Id*. at 7.

In its answer, Respondent asserts these issues should have been raised on

direct appeal.  Doc. 17 at 5.  Respondent points out that Petitioner concedes that

appellate counsel did not exhaust these grounds.  *Id*.; *see* Doc. 1 at 6.  Respondent

further points out that Petitioner tried to include these grounds in his Rule 3.850

proceeding, in his motion for rehearing – supplements to grounds 5 and 6. Doc. 17 at 5.

In his amended reply, Petitioner states that, under Florida law, his failure to

directly appeal the denial of counsel did not prohibit him from raising the issue in his

Rule 3.850 motion.  Doc. 33 at 4.  Petitioner asserts "no voluntary, intelligent and

knowing waiver was given or conducted by the trial court in violation of the Petitioner's

Sixth Amendment right under the United States Constitution and in violation of the

United States Supreme Court holding in <u>Faretta v. California</u>, 422 U.S. 806 (1975)."

Doc. 33 at 4-5.  Petitioner asserts the state procedural bar claim did not rest upon

"adequate" and "independent" grounds.  *Id*. at 5.

Petitioner further asserts in his amended reply that he received ineffective

assistance of appellate counsel for failure to raise on direct appeal the issue of denial of

counsel at sentencing and the hearing on the motion for a new trial.  *Id*. at 5-6.

Petitioner asserts he has set forth sufficient cause for any procedural default, given

appellate counsel's failure to raise the point.  *Id*. at 6.  Petitioner asserts he need not

demonstrate prejudice because complete denial of counsel "has been long-held by the

United States Supreme Court as 'presumptively prejudicial' at all 'critical stages' of the criminal proceedings." *Id*. (citing <u>United States v. Chronic</u>, 466 U.S. 648, 659 (1984)). Petitioner asserts appellate counsel's performance was deficient and Petitioner suffered prejudice because, if appellate counsel had raised the claim on appeal, "there is a reasonable probability that Petitioner would have gotten a lesser sentence on a reversal and prevailed on his new trial motion with appointed counsel." *Id*. at 7. Petitioner also asserts that even assuming he has defaulted his claims, "he has nonetheless showed and demonstrated 'cause and prejudice' requiring this Court's consideration of his claims on the merits." *Id*. at 8.

Petitioner argues the failure of the trial court "to renew appointment of counsel at 'critical stages' of the criminal proceedings, requires and mandate that petitioner be granted a new trial, new sentencing hearing, and new motion for a new trial evidentiary hearing under state law." *Id*. at 58. Petitioner asserts that "even if the United States Supreme Court has never addressed the issue of readvisement of a criminal defendant's right to counsel at each subsequent stage of the proceedings, its silence on that particular issue does not prevent federal courts from identifying and applying the general governing principles to the case at bar." *Id*. at 61-62. Petitioner also asserts the state's procedural bar "did not rest upon adequate and independent state grounds." *Id*. at 65.

As Respondent asserts, Petitioner did not exhaust Ground 1 because he did not raise these claims on direct appeal from his judgment and sentence. Petitioner's failure to raise this point on direct appeal was the basis for the state post-conviction trial court

denying this claim as raised by Petitioner in his Rule 3.850 motion.  *See* Doc. 17 Ex. X at 36; *see also* <u>Thompson v. State</u>, 969 So. 2d 1223 (Fla. 1st DCA 2007) (vacating sentence on direct appeal and remanding for resentencing, "prior to which an offer of assistance of counsel shall be made by the trial judge" because "Florida Rule of Criminal Procedure 3.111(d)(5) clearly mandates that the trial court renew its offer to appoint counsel at the sentencing stage of the trial").  The state post-conviction trial court thus denied this claim on a state procedural basis.  The First DCA affirmed without an opinion.

Before bringing a habeas claim in federal court, a state prisoner must exhaust all state court remedies available for challenging his conviction, either on direct appeal or in post-conviction proceedings.  28 U.S.C. § 2254(b), (c); *see* <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999); <u>Duncan v. Henry</u>, 513 U.S. 364, 365-66 (1995); <u>Picard v. Connor</u>, 404 U.S. 270, 277-78 (1971).  Fair presentation allows the state courts the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights."  <u>Duncan</u>, 513 U.S. at 365 (quoting <u>Picard</u>, 404 U.S. at 275).  The exhaustion requirement is not satisfied if a petitioner fails to raise the federal claim in the state court.  *See, e.g.,* <u>Bailey v. Nagle</u>, 172 F.3d 1299, 1303 (11th Cir. 1999) (explaining that claim that petitioner "simply never raised" in state court has not been exhausted).  By not fairly presenting this claim in state court, Petitioner has failed to meet the exhaustion requirement for Ground 1 and any attempts to do so now

appear precluded as procedurally barred.  *See, e.g.*, Mason v. Allen, 605 F.3d 1114, 1119 (11th Cir. 2010) ("In the process of exhausting a claim, the petitioner must comply with all 'independent and adequate' state procedures, or else the petitioner will have procedurally defaulted on that claim."); Harmon v. Barton, 894 F.2d 1268, 1270-71 (11th Cir. 1990) (explaining that, under Florida law, issues that were or could have been raised on direct appeal may not be reviewed in Rule 3.850 motion, and Rule 3.850 imposes procedural bar to successive motions for such relief when issue could have been raised in previous motion).

"[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance."  Coleman v. Thompson, 501 U.S. 722, 732 (1991); *see* Cone v. Bell, 556 U.S. 449 (2009) ("It is well established that federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.' . . . [W]hen a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the state court's refusal to adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal review." (quoting Coleman, 501 U.S. at 729). Such a petitioner, like Petitioner here, must "demonstrate cause for his state-court default of any federal claim, and prejudice therefrom, before the federal habeas court will consider the merits of that claim."  Edwards v. Carpenter, 529 U.S. 446, 451 (2000); *see* Coleman, 501 U.S. at 750.  The exception to this requirement "is the circumstance

in which the habeas petitioner can demonstrate a sufficient probability that our failure to review his federal claim will result in a fundamental miscarriage of justice." Edwards, 529 U.S. at 451; *see* Coleman, 501 U.S. at 750.

Even assuming, however, that Petitioner has exhausted this claim, or demonstrated cause to excuse the procedural default and prejudice resulting from the asserted error, this ground does not warrant federal habeas relief. As an initial matter, the record reflects that on the day of jury selection and trial, the state trial court did readdress the issue of Petitioner's decision to represent himself. *See* Doc. 17 Ex. A at 53. Specifically, just before jury selection began, the prosecutor asked the judge to make sure Petitioner understood "that he will be held to the same rules as a licensed attorney would be held to, as far as the materiality of questions, the relevance of questions, the form of the questions, that he will be held basically to the same standards as an attorney." *Id*. The following then transpired:

> THE COURT: That is a point well taken. Mr. Moore, I was going to advise you of the same thing, whether the state wanted me to advise you of that or not. I have already told you that when we were doing the Nelson and Faretta inquiry, and the ruling.
>
> It is important that you abide by all of the rules of evidence, the rules of procedure, trial procedure and protocol, that is in the form of questions, form of objections.
>
> MR. MOORE: Yes, sir.
>
> THE COURT: And all the things, you must comply, just as a licensed attorney must comply. And if I have to rebuke you and tell you that you are doing it wrong, I will try to do that such that you are not prejudiced. However, you must understand that if you are doing something wrong, I must correct you, whether that's in front of the jury or not, I must correct you. Do you understand that?

MR. MOORE: Yes, sir, I understand.

THE COURT: This is another reason why you are probably ill advised by going pro se.  Do you understand?

MR. MOORE: Yes, sir.

*Id*. at 53-54.  Thus, contrary to Petitioner's representations in his § 2254 motion, he was aware of his right to counsel at this stage and elected to continue to represent himself.

In addition, near the conclusion of the jury selection process, Petitioner stated to the trial judge, "My mother is in the audience out there, just had a few words with her. My mother informed me that she will, she will retain me a counsel, because I told her I needed one."  *Id*. at 150-51.  After some discussion about another issue, Petitioner stated, "I would still like to have an attorney – my mother and them to get me a private attorney of my own to represent this case."  *Id*. at 153.  The following then transpired:

THE COURT: What has she told you in that regard?

MR. MOORE: She's out there now.

THE COURT: No, what has she told you?

MR. MOORE: My mother?

THE COURT: Yes.

MR. MOORE: She going to get me a private attorney.

THE COURT: When did she tell you this?

MR. MOORE: Immediately, just a while ago before this –

THE COURT: During the course of our jury selection is when she told you that –

MR. MOORE: Just now.

THE COURT: Did she say what lawyer she has talked to?

MR. MOORE: No, sir. But she said she is going to immediately get one.

THE COURT: Did she say she could afford to hire a lawyer?

MR. MOORE: Yes, sir, and my sister.

THE COURT: Has she talked with any lawyers?

MR. MOORE: I don't know, but she is willing to come and give testimony right now about this.

THE COURT: Well, we are in the course of this trial. We have already started this trial, and it is too late right now for you to – unless an attorney came in through that door right now and sat down next to you. We need to proceed. We can't delay the case for this.

MR. MOORE: Yes, sir. It is supposed to be – if she is going to get me a private attorney, I am entitled to this right.

THE COURT: You are entitled to a private attorney, yes, but not at this point.

MR. MOORE: Yes, sir.

THE COURT: Not at this point in time, because you don't have one ready, willing and able to represent you, and there is no good cause for a continuance.

MR. MOORE: Good cause is available for a continuance, because if she going to get me an attorney, the court should have stringent rulings and ruling on it.

THE COURT: I have nothing before me to indicate at this point that there is any attorney that is ready, willing and able to represent you, other than Mr. Harrison [Petitioner's former court-appointed attorney], and you have indicated you don't want him. Your motion for continuance is denied.

MR. MOORE: I don't want him definitely.

THE COURT: Your motion is denied.

*Id*. at 153-55.  Clearly, Petitioner was well aware of his right to proceed with his court-appointed attorney, but he continued to proceed pro se, actively participating in the trial, examining and cross-examining witnesses, and raising objections.

Further, Petitioner does not disagree with the state trial court's determination at the <u>Faretta</u> hearing that he could represent himself at his trial.  *See* Doc. 17 Ex. C at 372-80 (transcript of state trial court hearing on Petitioner's request to represent himself).  Rather, Petitioner contends that the state trial court should have reinformed him, at his sentencing hearing and at the hearing on his motion for a new trial, that he had the right to an attorney.  As Respondent asserts, no U.S. Supreme Court precedent requires this.  Further, Petitioner has not asserted or demonstrated a substantial change in circumstances following the trial court's determination that he could represent himself, which is not particularly surprising given that Petitioner's sentencing took place the same day his trial concluded, and the hearing on his pro se motion for a new trial only two months later.  *See, e.g.*, <u>United States v. McBride</u>, 362 F.3d 360, 367 (6th Cir. 2004) (holding, on appeal from federal defendant's conviction, that "a defendant's waiver of counsel at trial carries over to subsequent proceedings absent a substantial change in circumstances" and explaining "[o]ther circuits have held that a valid waiver remains in effect at subsequent proceedings in the absence of an explicit revocation by the defendant or a change of circumstances that would suggest that the district court should make a renewed inquiry of the defendant"); <u>United States v. Nunez</u>, 137 F. App'x 214 (11th Cir. 2005) (citing <u>McBride</u> and holding that trial court was not required to sua sponte order second <u>Faretta</u> hearing at start of trial, four months after original

<u>Faretta</u> hearing: "If we were to place upon the district court an obligation to reassess its

<u>Faretta</u> hearing decision, we would do so only on a showing of a substantial change in

circumstances since the initial hearing.  Nunez has not demonstrated that there was a

substantial change in his condition between the time of his <u>Faretta</u> hearing and his trial.

To the contrary, his mental state, and uncooperative nature, appear to have remained

constant throughout the proceeding.  The district court committed no error in failing to

sua sponte order a second <u>Faretta</u> hearing." (citation omitted)).  *See also* <u>Jones v.

Walker</u>, 540 F.3d 1277, 1288 (11th Cir. 2008) (affirming denial of § 2254 petition that

claimed trial court violated petitioner's Sixth Amendment right to counsel because trial

court determined petitioner's repeated rejection of appointed counsel constituted

"functional waiver" of right to counsel, resulting in trial court's discharge of appointed

counsel and finding petitioner's conduct evinced voluntary choice to proceed pro se,

though petitioner never directly asked to represent himself).

Based on the foregoing, Ground 1 should be denied.

<u>Ground 2: Denial of Due Process by Denial of Fair and Impartial Judge</u>

In Ground 2, Petitioner asserts he was denied due process.  Doc. 1 at 8.  In

particular, Petitioner asserts that, after the jury found him guilty and the judge

sentenced him, Petitioner filed a motion for a new trial on January 24, 2006, based on

prosecutorial misconduct.  *Id.*  Petitioner indicates he alleged the prosecutor had

solicited and threatened Petitioner's only defense witness, James Ware, to commit

perjury and "failed to correct said perjury upon material matters during jury trial."  *Id.*

Petitioner further indicates that, on February 1, 2006, he filed a Petition for Writ of Habeas Corpus Ad Testificandum, requesting the trial court order his physical presence in open court for the hearing on his motion for a new trial. *Id*. at 9. Petitioner indicates he filed a renewed motion to this effect on February 15, 2006, which also requested that the hearing take place on February 20, 2006. *Id*. Petitioner states that, on March 22, 2006, with no prior notice, the hearing on his motion for a new trial took place telephonically, over Petitioner's objection. *Id*. Petitioner states that he objected based on due process and also asserted "it was unfair for . . . the hearing to proceed in this manner because [his] claim was prosecutorial misconduct." *Id*. at 9-10. Petitioner requested the hearing be postponed and that he be physically present. *Id*. at 10. The judge denied his request. *Id*. Petitioner then moved for disqualification of the judge because he felt the judge was unfair, prejudiced, and biased. *Id*. The judge denied this as well. *Id*.

The hearing proceeded and Petitioner states he could hear the prosecutor telling James Ware what to say. *Id*. at 10-11. Petitioner told the judge he thought the hearing was a miscarriage of justice and he renewed his motion to disqualify the judge. *Id*. at 11. The judge again denied the motion. *Id*. Petitioner states the judge "refused to advise and appoint counsel for this indigent petitioner and petitioner did not give up his right to voluntarily and intelligently waive his right to counsel at the hearing." *Id*.

Respondent asserts this ground was not exhausted and is procedurally barred. Doc. 17 at 19-20. Respondent points out the issues raised in this ground were cognizable on direct appeal. *Id*. at 20.

In his amended reply, Petitioner states the state trial court denied him appointment of counsel even though he reasserted his right to counsel on March 22, 2006, during the telephonic evidentiary hearing.  Doc. 33 at 8-9.  Petitioner asserts Respondent has failed to refute any of his allegations.  *Id*. at 9.  Petitioner cites Martinez v. Ryan, — U.S. —, 132 S.Ct. 1309 (2012), and argues this Court should consider that case here because "Petitioner was completely without counsel at sentencing and motion for new trial hearing and did not voluntarily or intelligently waive counsel at the hearings, nor did the trial court advise or appoint counsel."  Doc. 33 at 11.  Petitioner asserts that "a criminal defendant need not make an unequivocal request for appointment of counsel at trial, sentencing, motion for new trial, direct appeal or any other 'critical stages' of a proceeding."  *Id*. at 12 (citing Rothgery v. Gillespie County, 554 U.S. 191 (2008); Smith v. Robbins, 528 U.S. 259 (2000); Angensingen v. Hamlin, 407 U.S. 25 (1972); Gideon v. Wainwright, 372 U.S. 335 (1963)).  Petitioner further asserts "[i]t is well-established under federal and Florida law that the failure of a defendant to request counsel, shall not in itself, constitute a waiver of counsel at any stage of the proceedings."  Doc. 33 at 12-13 (citing Fla. R. Crim. P. 3.1111(d)(1)).  Petitioner disagrees with Respondent's assertion of harmless error regarding the sentencing proceeding and asserts the failure to appoint counsel is not subject to the harmless error analysis.  Doc. 33 at 14-15.  Petitioner asserts the First DCA's decision, a per curiam affirmance without a written opinion, "did not render judgment in Petitioner's case that clearly and expressly stated that it's judgment rested on a state procedural bar and . . . did not clearly and expressly rely on a waiver as grounds for any

aspect of Petitioner's denial of appointment of counsel claims." *Id*. at 18.  Petitioner

asserts he "has 'clearly and convincingly' demonstrated that the state court decision

was based on an unreasonable determination of the facts in light of the evidence

presented in state court and its decision was contrary to and involved an unreasonable

application of established federal laws." *Id*.  Petitioner asserts that because "the state

court applied its state law procedural bar manifestly unfair, petitioner is entitled to

federal review and relief." *Id*.  Petitioner asserts he is entitled to be appointed counsel

on his motion for new trial and "asserts his sixth amendment right to be appointed

counsel, for the new evidentiary hearing, with a new judge." *Id*. at 19.  Petitioner then

discusses how he did not waive counsel for purposes of his direct appeal, following his

state court conviction and sentence. *Id*. at 20-23.  Petitioner also makes arguments

that he could not have raised the claim of prosecutorial misconduct on direct appeal

because he did not learn of the grounds until after the trial; therefore, he could not

make a contemporaneous objection, to preserve the point for appeal. *Id*. at 25-27.

Petitioner argues that his only remedy was post-conviction relief and "because

petitioner was not advised or offered an assistance of counsel at the motion for new

trial hearing, Petitioner's right to counsel and due process of law rights were violated

and the state court failed to provide adequate and independent grounds for denial of

Petitioner's claim." *Id*. at 28.  Petitioner reiterates his arguments from his § 2254

petition. *Id*. at 29-35.  Petitioner asserts Respondent has failed to provide this Court a

copy of the transcript record conclusively refuting Petitioner's sworn allegations. *Id*. at

36.

Respondent's point is well-taken.  The arguments raised in this ground were not raised in the direct appeal from Petitioner's judgment and conviction and, therefore, are not exhausted and are now procedurally barred.  As with the analysis of Ground 1, to the extent Petitioner here challenges the denial of his motion for a new trial, the state post-conviction trial court denied that claim because it was not raised on direct appeal. *See* Doc. 17 Ex. X at 36; *see also, e.g.*, Kelley v. State, 16 So. 3d 196 (Fla. 1st DCA 2009); Ferebee v. State, 967 So. 2d 1071 (Fla. 2d DCA 2007).  The state post-conviction trial court thus denied the claim on a state procedural basis, and the First DCA affirmed without an opinion.

Further, the Martinez case, cited by Petitioner in his reply, is distinguishable from this case.  In that case, the U.S. Supreme Court held: "Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." Martinez, 132 S.Ct. at 1320.  Here, however, as discussed above, Petitioner elected to represent himself in the trial court.  *See* Doc. 17 Ex. C at 372-380 (transcript of state trial court Faretta hearing) and Ex. D at 694-95 (state trial court order granting Petitioner's motion to represent himself).

Notably, Petitioner also initially elected to proceed pro se in his direct appeal. Doc. 17 Ex. B at 337 (trial transcript).  At the conclusion of Petitioner's trial and sentencing, the state trial judge advised Petitioner, "You have a right to court appointed

counsel," and Petitioner responded, "I would like to do the direct appeal myself." *Id*.

The judge stated "that is not advisable," and Petitioner maintained, "I know, Your Honor,

but I would like to do it myself." *Id*. After further discussion, the trial judge concluded,

"[I]f you are going for [sic] request any kind of assistance from any public defender, you

are going to have to request that in writing and file something with the clerk to get a

court order or to have them appointed." *Id*. at 340. Petitioner responded, "Yes, sir." *Id*.

The record reflects that Petitioner filed his own notice of appeal. Doc. 17 Ex. E at 778-

79. On March 3, 2006, Petitioner filed a request to have the Office of the Public

Defender represent him for the purposes of his appeal. *Id*. at 803–04. Thereafter, the

state court appointed counsel for Petitioner for his appeal. *Id*. at 873.

Based on the foregoing, Ground 2 should be denied.

Ground 3: Denial of Counsel at Trial

In Ground 3, Petitioner asserts that he voluntarily waived counsel at a pretrial

hearing on January 10, 2006. Doc. 1 at 19. At another pretrial hearing on January 17,

2006, the judge asked Petitioner if he still felt it was in his best interest to proceed

without an attorney, and Petitioner answered, "Yes, sir, because of the position you put

me in." *Id*. at 19-20. Petitioner indicates this was the only inquiry done before the

hearing commenced. *Id*. at 20. Petitioner asserts he was indigent and "the trial court

did not renew an offer of assistance of counsel or do a thorough inquiry at this critical

separate stage of the proceeding." *Id*. Petitioner indicates after that pretrial hearing

concluded, the court recessed "and thereafter jury selection began." *Id*. Petitioner

states, "[t]he trial court did not renew or advise the petitioner that he had a right to

counsel at this separate stage of the proceeding, once again." *Id*.  Petitioner states that he did not voluntarily waive his right to counsel "except on January 10, 2006." *Id*.

In the answer, Respondent relies on the response for Ground 1.  Doc. 17 at 21. Specifically, Respondent asserts this ground was not exhausted and is now procedurally barred.  *Id*.  If not barred, it is a state law issue and, if the Sixth Amendment to the U.S. Constitution was implicated at all, no U.S. Supreme Court decision requires a trial court to re-advise of the right to counsel.  *Id*.

In his amended reply, Petitioner states he was denied his right to assistance of counsel at the trial stage of his state court proceeding.  Doc. 33 at 37.  Petitioner reiterates his assertions from his § 2254 petition.  *Id*.  Petitioner asserts the state trial court "never renewed or offered assistance of counsel or did any inquiry regarding Petitioner's voluntary waiver of counsel as required by Fla. R. Crim. P. 3.111(d)(5)." *Id*. at 37-38.  Further, "[a]s required by <u>Faretta</u>, the trial court did not inquire into the Petitioner's right to appointed assistance of counsel at the 'critical stage' of the trial proceeding, leaving Petitioner to proceed pro se and uncounseled." *Id*. at 38. Petitioner cites Florida state law and argues that "[w]hen the trial court failed to renew the Petitioner an offer of assistance of counsel before the commencement of trial, it failed to comply with the Florida Supreme Court's precedent in <u>Traylor v. State</u>, [596 So. 2d 957 (Fla. 1992),] and Florida R. Crim. P. 3.111(d)(5) which required and mandated a new trial for Petitioner under Florida law."  Doc. 33 at 39.  Petitioner asserts he "did not waive his right to counsel on the day of trial and in accordance to Federal Law under the sixth amendment to the United States Constitution and fourteenth

amendment to the United States Constitution, Due Process of the Law, Petitioner did not voluntarily, intelligently and knowingly waive these well-established rights."  *Id*. at 40.  Petitioner asserts he is entitled to a new trial and because "the state court applied state law inconsistently and manifestly unfair, this Court should review and determine Petitioner's claims."  *Id*. at 41.

Again, Respondent's position is well-taken.  Petitioner's claim in this ground appears the same or substantially similar to Ground 1.  Accordingly, for the reasons set forth in the analysis of Ground 1, Ground 3 should likewise be denied.

<u>Ground 4: Trial Court Erred in Admitting Hearsay Testimony</u>

In Ground 4, Petitioner asserts the state trial court erred in admitting the hearsay testimony of Betty Moore Evans, in violation of Petitioner's Due Process and Confrontation Clause rights.  Doc. 1 at 21.  Petitioner asserts that during his trial on January 18, 2006, over his hearsay objection, the trial court allowed Betty Evans to testify that Ernest Moore said, "Chris done stole my guns."  *Id*.  Petitioner further explains that the trial court admitted this statement under the excited utterance exception.  *Id*. at 22.  In addition, also over Petitioner's "objection to hearsay, scandalous and collateral crime evidence, the trial court allowed Betty Evans' testimony that Petitioner had 'robbed' Ernest Moore on an unrelated crime that the Petitioner was never accused never reported and non-existent."  *Id*. at 21-22.  Petitioner states he moved for a mistrial after Evans' second hearsay statement, but the trial court denied his motion.  *Id*. at 22.  Petitioner indicates he objected "on the grounds that the testimony was prejudicial to him and the probative value of the testimony outweighed

the fairness to his defense" and also objected "that the testimony was scandalous, false and unsupported by any evidence and that Ernest Moore was not here to testify that Petitioner had 'robbed' him." *Id*. Petitioner states the trial court gave "a small limited curative instruction, but the damage was done." *Id*.

Petitioner also indicates that he had filed a motion to strike and exclude testimony from Betty Evans, as well as Captain Willie McGhee, "as violative of his confrontation rights under state and federal constitutions, in regard to Ernest Moore statements." *Id*. at 23. On January 17, 2006, after hearing argument, the trial court denied the motion. *Id*.

In the answer, Respondent asserts no federal issue was presented to the state trial or appellate court. Doc. 17 at 23-24. Respondent explains that, during the trial, the State of Florida called Ms. Evans as the first witness. *Id*. at 23. The prosecutor established that Ms. Evans was the sister of Ernest Moore, who died from lung cancer in the summer of 2005. *Id*. Ms. Evans testified that Ernest Moore had a bag in his room and, before he entered the hospital, there were six pistols in the bag; however, when he returned home (to die), all the pistols were gone. *Id*. Evans testified that when Ernest Moore saw the guns were gone, he started crying and said, "Chris [Petitioner] done stole my guns." *Id*.; Doc. 17 Ex. B. at 206-11. There was no objection at this point. Doc. 17 at 23. Evans continued to testify and, not long after, Petitioner objected that Evans' testimony about what Ernest Moore said was hearsay and highly prejudicial. *Id*. Petitioner asserted "the probative value of the testimony clearly outweighs dangers of that testimony to the defendant" and "[i]n other words, he ain't here to testify to that."

*Id*. The State asserted that the excited utterance exception applied. *Id*. The court overruled the objection. *Id*. No federal grounds were advanced. *Id*.

Similarly, Respondent explains, no federal arguments were raised on direct appeal. The second point raised in the Initial Brief filed by Petitioner's appellate counsel, was couched entirely in terms of state law. *Id*. at 24; *see* Doc. 17 Ex. L at 15-19. The State's Answer Brief responded accordingly. Doc. 17 at 24; *see* Doc. 17 Ex. M at 6-8. No federal law was mentioned in the Reply Brief. Doc. 17 at 24; *see* Doc. 17 Ex. N at 3-5.

Therefore, concludes Respondent, no federal issue was raised in the state courts with regard to the trial court's evidentiary ruling. Doc. 17 at 24. Petitioner's Due Process and Confrontation Clause claims in this Ground are not exhausted. Accordingly, this Ground is procedurally barred.

In his amended reply, Petitioner states that Florida courts do not regularly or consistently require defendants to refer to the Constitution or other federal laws, to raise such claims on direct review. Doc. 33 at 3. Petitioner asserts, therefore, Respondent has not met its burden of showing Petitioner defaulted on any of his claims. *Id*. Petitioner further asserts the state trial court denied his right to confrontation under the Sixth Amendment of the U.S. Constitution, and "the state court's adjudication of this claim resulted in a decision that was contrary to, or involved and unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court." *Id*. at 42. Petitioner states, "Although Petitioner objected to the admission of the statement in state court on hearsay grounds, Petitioner exhausted

Sixth Amendment confrontation clause claim in state court by raising hearsay

objections even though Petitioner never raised sixth amendment claim in state court."

*Id*. at 42-43.  Petitioner asserts he sufficiently apprised the state court of the nature of

his Confrontation Clause right under the Sixth Amendment "albeit, without saying the

words, did sufficiently alert the state court of the substance of his claim."  *Id*. at 44.

Petitioner then recounts the history of his case, beginning with his arrest.  *Id*. at 44-48.

Petitioner argues that the statement made by Ernest Moore was "testimonial" and

violated his right to confrontation under the Sixth Amendment, and Petitioner cites to

Crawford v. Washington, 541 U.S. 36 (2004).  Doc. 33 at 49-54.

Petitioner also reiterates that during his trial, Betty Evans made a spontaneous

statement, during cross-examination by Petitioner, that Petitioner had "robbed" Ernest

Moore.  *Id*. at 54.  Petitioner indicates he objected that this was "highly prejudicial and

scandalous" and moved for a mistrial, which the trial court denied.  *Id*. at 54-55.

Petitioner argues the erroneous admission of this collateral crime evidence is

presumptively harmful.  *Id*. at 55-56.

The Court agrees with Respondent's position that no federal issue was

presented to the state trial or appellate court.  *See* Baldwin v. Reese, 541 U.S. 27, 32

(2004) (holding that "ordinarily a state prisoner does not 'fairly present' a claim to a

state court if that court must read beyond a petition or a brief (or a similar document)

that does not alert it to the presence of a federal claim in order to find material, such as

a lower court opinion in the case, that does so" and explaining that "[a] litigant wishing

to raise a federal issue can easily indicate the federal law basis for his claim in a state-

court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal'").  Because Petitioner did not adequately raise a federal claim in his state court proceedings, Ground 4 is unexhausted and procedurally defaulted.  Petitioner has not shown cause and prejudice or a fundamental miscarriage of justice.  Therefore, the Court need not address the claim on its merits.

In particular, a review of the state court trial transcript reveals that Petitioner's objection to Evans' testimony, which occurred with a bit of a delay after the objectionable statement, may not have clearly apprised the trial court of a federal issue:

> Q.  When Mr. Ernest Moore saw that the bag had been tampered with and the pistols were missing, what was his reaction?
>
> A.  He started crying.  First, his bottom lip started trembling, and then he started crying.  He said that – he said, Chris done stole my guns.
>
> Q.  And when he said that, you said his lips were trembling and he was crying?
>
> A.  Yes.
>
> Q.  Had you seen him cry very often?
>
> A.  Never seen him crying in my life.
>
> Q.  Even though he had terminal cancer.
>
> A.  Even though he had cancer.
>
> Q.  And did he say why he was upset besides the fact that the guns were gone?
>
> A.  He didn't want the guns getting in the wrong hands.
>
> Q.  He didn't want them on the street?

A.  He didn't want them on the street.  He didn't want nobody to get killed with his guns.  He didn't want their blood on his guns.

[PROSECUTOR]: This will be State Exhibit Number 4.

THE COURT: It hasn't been marked yet?

[PROSECUTOR]: It is not marked yet.  It will be State Exhibit 4.  I would like to proceed.

THE COURT: You may proceed.

Q.  I show you what will be marked State Exhibit 4.  Does this look like one of the guns that was in his bag?

A.  That looks like one.  I can't swear, but that looks like the gun.

Q.  Now, when you took Ernest Moore home to where he was staying with Marie, was her house in Madison County, Florida?

A.  Yes, sir.

Q.  And that's where these guns were in a closet in a house in Madison County, Florida?

A.  Yes.

Q.  And has Ernest passed?

A.  Yes, sir.  He passed August the 24th.

Q.  August the 24th.

MR. MOORE: Your Honor, I object.  I move to strike Betty Evans' testimony.  She said that Ernest Moore said that Chris had took his guns.  That's hearsay testimony, and it is highly prejudice and the probative value of the testimony clearly outweighs dangers of that testimony to the defendant.

In other words, he ain't here to testify to that, by her making that statement, she done –

THE COURT: I understand the legal basis for your objection, Mr. Moore.  Based on his objection to hearsay, does state suggest that there is any exception?

[PROSECUTOR]: Yes, there is.  Excited utterance to the testimony. It was the first time that his sister, the witness, had seen him cry and his lips trembling that he was under the impact of a situation of discovering his pistols missing.

MR. MOORE: Objection, Your Honor.  The doctrine of excited utterance was not called up under that.  In other words, she wasn't up under any type of stress or tension when she allegedly made that statement.

THE COURT: He is saying that when your uncle made that statement, he was under – there was an excited utterance at that time.  And the court finds it is a valid exception.

The motion to strike is denied.  Overruled.  Proceed.  If you would mark this as Exhibit Number 4 [gun], please.

Doc. 17 Ex. B at 211-13.

In the Initial Brief on appeal, Petitioner's appellate counsel raised a point

regarding the admission of this testimony: "THE TRIAL JUDGE ABUSED ITS

DISCRETION IN ALLOWING THE HEARSAY TESTIMONY OF BETTY MOORE."  *Id*.

Ex. L at I.  The brief does not cite any federal law, though it does make a parenthetical

reference to the Sixth Amendment Confrontation Clause.  *Id*. at ii-iii, 11, 16.

Specifically, in the argument section for the hearsay issue, the brief contains the

following discussion:

[A]s its first witness, the prosecutor elicited from Betty Moore, who was Ernest Moore's sister, that Ernest told her that Mr. Moore had stolen his guns.  By the time Betty Moore testified, Ernest had died.  (This would have been a classic Sixth Amendment Confrontation Clause violation but Mr. Moore did not object on those grounds.)  Betty Moore testified . . . .

*Id*. at 15-16.  The brief then argues the judge abused his discretion in admitting the testimony as an excited utterance, citing only Florida statutes and case law.  *Id*. at 16-19.  The argument concludes:

> The judge's ruling was an abuse of discretion and was significantly prejudicial.  This is especially true given that the theft of the guns was not an issue in the case for the State had already dropped that charge.  It provided the State a direct link from the missing guns to Mr. Moore's possession.  This was error.

*Id*. at 18-19.

In the Answer Brief on appeal, responding to the hearsay point raised, the State did not cite to any federal authority.  *Id*. Ex. M at ii, 2, 6-8.  The State argued Betty Evans' description of Ernest Moore's emotional condition at the time he made the statement was adequate for the trial court to conclude the statement constituted an excited utterance and the trial court did not abuse its discretion in so concluding.  *Id*. at 8.  The State also argued, in addressing Petitioner's apparent relevance argument, that the statement "was admissible to show and explain the entirety of the event rather than mere segments of it."  *Id*.  Finally, the State argued that an error was harmless because Petitioner was on trial for possession of a firearm by a convicted felon and "no less than three separate witnesses testified as to [Petitioner's] possession of a gun."  *Id*. (citing State v. DiGuilio, 491 So. 2d 1129 (Fla. 1986)).

Petitioner's appellate counsel filed a Reply Brief in the appeal.  *Id*. Ex. N.  Again, no federal authority was cited.  *Id*. at ii, 3-5.  In response to the State's assertions, Petitioner's counsel argued no startling event occurred, Ernest Moore's described condition was "legally insufficient to render a statement an excited utterance," and the

error was not harmless. *Id*. at 3-4. Counsel asserted that the error was not harmless because "[i]t is not enough to say there were three witnesses because each of those witnesses had some baggage attached to their testimony" and, further, Betty Evans "wanted to help her dead brother by prosecuting Christopher Moore; there was clearly animosity between the two of them." *Id*. at 4-5.

The First DCA issued a per curiam affirmance without an opinion. "The state appellate court's affirmances warrant deference under AEDPA because 'the summary nature of a state court's decision does not lessen the deference that it is due.'" Gill v. Mecusker, 633 F.3d 1272, 1288 (11th Cir. 2011) (quoting Wright v. Moore, 278 F.3d 1245, 1254 (11th Cir. 2002)). The state court ruling did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1), (2).

"Federal habeas corpus relief based on evidentiary rulings will not be granted unless it goes to the fundamental fairness of the trial." McCoy v. Newsome, 953 F.2d 1252, 1265 (11th Cir. 1992). Even if this hearsay issue had been sufficiently presented as a federal claim to the state courts, and assuming the statement at issue was erroneously admitted, after a review of the trial transcript, this Court cannot say the testimony of Betty Evans regarding the statement of Ernest Moore, that "Chris done stole my guns," was prejudicial to Petitioner's conviction for possession of a firearm by a convicted felon. *See* McCoy, 953 F.2d at 1265 ("In light of the overwhelming evidence of McCoy's guilt cited earlier, we cannot say that the evidence of his prior

conviction was prejudicial to his convictions for kidnapping and armed robbery.

Consequently, it cannot serve as grounds for federal habeas corpus relief.").

Confrontation Clause claims are subject to harmless error analysis. *See* <u>Coy v. Iowa</u>, 487 U.S. 1012, 1021-22 (1988); <u>Mason</u>, 605 F.3d at 1123; <u>United States v. Edwards</u>, 211 F.3d 1355 (11th Cir. 2000). In habeas proceedings, an error is harmless when the court determines it did not have a "substantial and injurious effect or influence in determining the jury's verdict." <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 623 (1993). "To show prejudice under <u>Brecht</u>, there must be more than a reasonable probability that the error contributed to the [conviction or] sentence." <u>Mason</u>, 605 F.3d at 1123. In analyzing the effect of a Confrontation Clause violation, the court considers "several factors, including 'the importance of the witness' testimony in the prosecutions case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, . . . and, of course, the overall strength of the prosecution's case.'" *Id*. at 1123-24 (quoting <u>Delaware v. Van Arsdall</u>, 475 U.S. 673, 684 (1986)).

Here, as indicated above, and as pointed out in the State's Answer Brief in Petitioner's direct appeal, Petitioner was on trial for a single charge, possession of a firearm by a convicted felon. Betty Evans' testimony about Ernest Moore's statement was not important to or central in the prosecution's case. Three witnesses testified to seeing Petitioner with a gun in his possession – Petitioner tried to sell a gun to two of the witnesses and Petitioner handed a gun to the third witness, to keep for Petitioner. *See* Doc. 17 Ex. B at 236-37, 242-43, 247-48. Given this testimony, there is not a

reasonable probability that any error in admitting Betty Evans' testimony contributed to Petitioner's conviction.

Based on the foregoing, Ground 4 should be denied.

## Conclusion

Based on the foregoing, Petitioner is not entitled to federal habeas relief. The amended § 2254 petition (Doc. 6) should be denied.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted). Therefore, the Court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." The parties shall make any argument as to whether a certificate should issue by objections to this report and recommendation.

Leave to appeal in forma pauperis should also be denied.  *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## Recommendation

It is therefore respectfully **RECOMMENDED** that the Court **DENY** Petitioner's § 2254 petition (Doc. 1).  It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on March 14, 2013.


S/    Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO PARTIES

**Within fourteen (14) days after being served with a copy of this report and recommendation, a party may serve and file specific, written objections to the proposed findings and recommendations.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**